IN RE T.C.B.

[166 N.C. App. 482 (2004)]

---

IN RE: T.C.B.

No. COA03-1591

(Filed 21 September 2004)

**Termination of Parental Rights— willful abandonment—pending sexual abuse investigation**

The trial court erred by concluding that grounds existed to terminate respondent father's parental rights to his natural daughter based on willful abandonment under N.C.G.S. § 7B-1113, because: (1) respondent was instructed by legal coun-

**IN RE T.C.B.**

[166 N.C. App. 482 (2004)]

sel not to have any contact with the minor child or the mother until pending criminal charges alleging respondent's sexual abuse with the minor child were resolved, the criminal charges were filed almost two years prior to the relevant six month period, and they were not resolved until several months after the termination of parental rights petition was filed; (2) during this time, DSS entered into a protection plan with the mother that provided there would be no visitation with respondent due to allegations of abuse that were being investigated; (3) none of the other findings of fact made by the district court support the conclusion of willful abandonment; and (4) child support payments were made during the relevant six month period of time.

Appeal by respondent from judgment dated 17 July 2003[1] by Judge Rebecca B. Knight in Buncombe County District Court. Heard in the Court of Appeals 25 August 2004.

*No brief filed for petitioner-appellee.*

*Charlotte Gail Blake for respondent-appellant.*

BRYANT, Judge.

P.N.S. (respondent-father) appeals a judgment adjudicating that grounds exist to terminate his parental rights as to his natural daughter T.C.B.

L.B. (the mother) and respondent are the natural parents of T.C.B., born 21 September 1995. Both the mother and the respondent were 14 years of age at the time T.C.B. was conceived. On 2 February 2002, the mother filed a petition to terminate the parental rights of respondent on the ground that he willfully abandoned T.C.B. as defined by N.C. Gen. Stat. § 7B-1111(a)(7). Respondent filed an answer requesting that his parental rights not be terminated. A guardian ad litem was appointed to represent the interest of the minor child.

This matter came for hearing at the 10 June 2003 session of Buncombe County District Court with the Honorable Rebecca B. Knight presiding. The district court entered an order finding that grounds existed to terminate the parental rights of respondent because he willfully abandoned the minor child for six months preceding the filing of the petition to terminate his parental rights.

---

1. The caption has been altered to show only the minor child's initials.

Respondent gave timely notice of appeal.

*Right to appeal*

N.C. Gen. Stat. § 7B-1113, provides that any parent who is a party to a termination of parental rights (TPR) "proceeding under this Article may appeal from an *adjudication or any order of disposition* to the Court of Appeals, provided that notice of appeal is given in writing within 10 days after entry of the order." N.C.G.S. § 7B-1113 (2003) (emphasis added). In the case *sub judice*, a final disposition was not entered in this case as evidenced by the district court's decree:

1. Grounds exist for termination of parental rights of the Respondent, [P.N.S.], to the minor child, [T.C.B.].

2. The court will withhold entry of a judgment terminating parental rights of [P.N.S.] until such time as the Petitioner files with the Clerk of Superior Court a petition to adopt by [the mother's boyfriend] and a consent to adopt signed by the Petitioner. Upon presentation to this court of the petition to adopt filed by [the mother's boyfriend] and the consent of the Petitioner to the adoption of the minor child by [the mother's boyfriend], the court will enter a final order terminating the parental rights of the Respondent, [P.N.S.].

3. That if a final order terminating parental rights of the Respondent, [P.N.S.], to the minor child [T.C.B.], is not entered prior to November 1, 2003, then the matter may be noticed in for further hearing on the Respondent's request for visitation. The Respondent's obligation to pay child support on behalf of [T.C.B.] shall continue unless the court grants an order terminating his parental rights.

However, pursuant to N.C. Gen. Stat. § 7B-1113, respondent has a right to appeal from the adjudication order. *See* N.C.G.S. § 7B-1113 (any parent who is a party to a termination of parental rights "proceeding under this Article may appeal from an adjudication or any order of disposition to the Court of Appeals").

*Standard of Review*

There are two stages involving a petition to terminate parental rights: adjudication and disposition. At the adjudication stage, the petitioner has the burden of proving by clear, cogent and convincing evidence that at least one statutory ground for termination exists.

*In re McMillon*, 143 N.C. App. 402, 408, 546 S.E.2d 169, 173-74 (2001); *see* N.C.G.S. § 7B-1109(f) (2003) (requiring findings of fact to be based on clear, cogent, and convincing evidence). A finding of one statutory ground is sufficient to support the termination of parental rights. *In re Pierce*, 67 N.C. App. 257, 261, 312 S.E.2d 900, 903 (1984). Upon so finding, the district court proceeds to the disposition stage, where it determines whether termination of parental rights is in the best interest of the child. *McMillon*, 143 N.C. App. at 408, 546 S.E.2d at 174. On appeal, this Court reviews whether the district court's findings of fact are supported by clear, cogent and convincing evidence, and whether those findings support the district court's conclusions of law. *Id.* at 408, 546 S.E.2d at 174. If the decision is supported by such evidence, the district court's findings are binding on appeal, even if there is evidence to the contrary. *In re Williamson*, 91 N.C. App. 668, 674, 373 S.E.2d 317, 320 (1988).

---

On appeal, respondent argues that the district court erred in adjudicating that grounds existed to terminate his parental rights based on the allegation of willful abandonment. We agree and hold that the findings do not support the determination of willful abandonment and reverse the adjudication decision.

N.C. Gen. Stat. § 7B-1113, defines willful abandonment as when: "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion." N.C.G.S. § 7B-1113 (2003). "Abandonment imports any wil[l]ful or intentional conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child." *In re Apa*, 59 N.C. App. 322, 324, 296 S.E.2d 811, 813 (1982). In this context, "the word 'willful' encompasses more than an intention to do a thing; there must also be purpose and deliberation." *In re Adoption of Searle*, 82 N.C. App. 273, 275, 346 S.E.2d 511, 514 (1986). "Whether a biological parent has a willful intent to abandon his child is a question of fact to be determined from the evidence." *Id.* at 276, 346 S.E.2d at 514.

Here, the district court found willful abandonment based on the reasons that

[t]he Respondent father has not had any visits with the child since August 1999 and has not requested any visits since the mother told him in August 1999 that he could not see the child for the weekend requested. The Respondent never exercised regular

and consistent visitation with the child since her birth. The Respondent has never had the child with him for an overnight visit since her birth. . . . The Respondent father has not sent the child letters, cards, or gifts on a regular basis. The criminal charges against the father limited Respondent's ability to be involved in parenting of his child but there were actions he could have taken that could have kept him more involved with his child. . . . The actions of the Respondent since the birth of the child constitute . . . abandonment of the child.

Analyzing the above, we are bound to determine whether the findings of fact support this conclusion, focusing on respondent's actions as they transpired during the relevant six month period preceding the filing of the TPR petition (September 2001) and the actual filing of the TPR petition (February 2002). We hold the findings of fact do not support this conclusion. Specifically, significant portions of findings of fact 13, 14, and 20 reveal:

13. . . . [Respondent] did have one visit with the minor child on August 15, 1999, when he took her to the Sourwood Festival. Later in August after he finished band camp, the respondent called the [mother] on a Thursday evening and asked if he could visit [T.C.B.] on Saturday. [The mother] said, "You can't call" and hung-up the telephone. The Respondent immediately called [the mother] back and asked what she meant and she said, "Someone will inform you shortly."

At some point after that, in the fall of 1999, the Respondent was charged with First Degree Sexual Offense and the alleged victim was the minor child, [T.C.B.]. The incident allegedly occurred the day he took the child to the Sourwood Festival. **The Respondent and his parents were instructed by attorney, Sean Devereux, who represented him in the criminal case that they should not attempt contact with the child or [L.B.] until the criminal case resolved.** The Respondent and his parents have not had any contact with the minor child or [L.B.] since that time except that gifts were sent for Christmas of that year. During the criminal proceedings, there were discussions involving the dismissal of the criminal charges if the respondent would relinquish his parental rights. The Respondent refused to voluntarily relinquish his parental rights because he did not want the child to grow up thinking he had done so to protect himself. **The State filed a voluntary dismissal of the**

**criminal charges with prejudice in the spring of 2002.** [Attorney] Devereux and the Respondent did not learn the charges had been dismissed until December 2002.

14. The Respondent received a settlement from a personal injury action that paid him $25,000.00 on his 18th, 19th, 20th, and 21th birthdays. **He started paying temporary child support of $200.00 per month beginning October 2001 until the matter was heard in court then Respondent began paying $494.00 per month. The Respondent also made a lump sum payment of $4,000.00 at some point after receiving his annuity payments. The Respondent made the last child support payment in April 2003.** He has not made any payments since then because he does not have any money. The Respondent has used all of the $100,000.00 received from the annuity settlement.

. . .

20. . . . **In the fall of 1999, the Department of Social Services entered into a protection plan with [the] mother that provided there would be no visitation with [Respondent] due to allegations of abuse that were being investigated.**

(emphasis added).

These findings clearly indicate respondent was instructed by legal counsel not to have any contact with the minor child nor the mother until the pending criminal charges were resolved. The criminal charges were filed almost two years prior to the relevant six month period, and were not resolved until several months after the TPR petition was filed. During this time, DSS entered into a protection plan with the mother that provided there would be no visitation with respondent due to allegations of abuse that were being investigated. None of the other findings of fact made by the district court support the conclusion of willful abandonment as defined by our court in prior opinions. *Cf. Searle,* 82 N.C. App. at 276-77, 346 S.E.2d at 514 ("Respondent had been released from prison for over one year before he sent any support money, and respondent admitted in his testimony that the custody order did not prevent him from supporting, calling or corresponding with the child."); *Apa,* 59 N.C. App. at 324, 296 S.E.2d at 813 ("except for an abandoned attempt to negotiate visitation and support, respondent 'made no other significant

attempts to establish a relationship with [M.A.A.] or obtain rights of visitation with [M.A.A.]' ").

The findings of fact do indicate, however, that child support payments were made during the relevant six month period of time. The findings state that respondent started paying temporary child support in the amount of $200.00 per month beginning October 2001 (one month after the relevant six month period) until the matter was heard in court (no date given), when respondent began paying $494.00 per month; and respondent also made a lump sum payment of $4,000.00 at some point after receiving his annuity payments. These findings regarding the payment of child support further serve to undermine the district court's conclusion of willful abandonment. Accordingly, this assignment of error is overruled.

Reversed and remanded.

Judges HUDSON and TYSON concur.