IN THE SUPREME COURT OF NORTH CAROLINA

No. 258A19

Filed 1 May 2020

IN THE MATTER OF: A.G.D. and A.N.D.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on 6 March 2019 by Judge Robert J. Crumpton in District Court, Ashe County. This matter was calendared for argument in the Supreme Court on 25 March 2020 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*No brief filed for petitioner-appellee mother.*

*Edward Eldred for respondent-appellant father.*

ERVIN, Justice.

Respondent-father Aaron D. appeals from orders[1] entered by the trial court terminating his parental rights in his minor children A.G.D. and A.N.D. on the grounds of willful abandonment.[2] After careful consideration of respondent-father's challenge to the trial court's termination orders in light of the record and the

---

[1] The trial court entered separate, although essentially identical, orders terminating respondent-father's parental rights in each of his two children. For ease of comprehension, we will treat these separate orders as a single document throughout the remainder of this opinion.

[2] We will refer to A.G.D. and A.N.D. throughout the remainder of this opinion as "Amy" and "Andy," respectively, with these names being pseudonyms that we use for ease of reading and to protect the privacy of the juveniles.

applicable law, we conclude that the trial court's termination orders should be affirmed.

Petitioner Amber D. and respondent-father were married in April 2008, with Amy having been born to the parents in 2008 and with Andy having been born to the parents in 2011. The parties separated in March 2013 after Amy revealed that respondent-father had committed repeated sexual assaults against her. Along with a number of other individuals, respondent-father was subsequently charged with having committed multiple criminal acts of sexual abuse in the state and federal courts, including crimes involving child pornography. On 27 May 2014, an order was entered granting the mother sole legal and physical custody of the children, with respondent-father being ordered to have no contact with them in the absence of a further order of the court.[3] A judgment granting an absolute divorce between the parents was entered in July 2014.

On 26 June 2018, the mother filed petitions seeking to have respondent-father's parental rights in the children terminated on the grounds that he had willfully failed to pay any portion of the cost of the children's care and that he had willfully abandoned the children. *See* N.C.G.S. § 7B-1111(a)(4), (7) (2019). After a

---

[3] The custody and visitation order in question, which the trial court incorporated by reference into the termination order, found as a fact that respondent-father was "currently incarcerated in [the] Ashe County Jail" and was "under a [c]ourt [o]rder not to have any contact with [Amy]" or "with a child under 18" and ordered that respondent-father "shall have no contact with the [children] absent future [o]rders of this Court."

hearing held on 25 February 2019, the trial court entered orders terminating respondent-father's parental rights in both children on 6 March 2019,[4] with this decision resting upon determinations that respondent-father had willfully abandoned Amy and Andy and that the termination of respondent-father's parental rights in the children would be in their best interests. Respondent-father noted appeals to this Court from the trial court's termination orders.

In seeking to persuade us to grant relief from the trial court's termination orders, respondent-father argues that the trial court erred by determining that his parental rights in the children were subject to termination on the grounds of willful abandonment in light of the fact that he had been "prohibited . . . from having any contact with his children." According to respondent-father, "it was not within [his] power to display his love and affection for his children because he was court-ordered not to contact them." In respondent-father's view, the trial court's reliance upon his failure to seek relief from the earlier custody and visitation order was misplaced given that the record contained no evidence tending to show that he had the ability to make such a filing or that there had been "any change of circumstances warranting the filing of" such a motion, citing *Shipman v. Shipman*, 357 N.C. 471, 474, 586 S.E.2d 250, 253 (2003) (stating that a party is only entitled to seek to have a prior custody

---

[4] The trial court did not find that respondent-father's parental rights in the children were subject to termination on the grounds of a willful failure to pay a reasonable portion of the cost of the children's care.

order modified in the event that "there has been a substantial change in circumstances and that the change affected the welfare of the child"), with it "beg[ging] belief" that respondent-father "could have filed a custody motion every six months for four years." As a result, since respondent-father "was court-ordered not to contact [his children] and could only have shown them filial affection by disobeying a court's order," respondent-father contends that the trial court's termination orders should be reversed.[5]

"We review a trial court's adjudication under N.C.G.S. § 7B-1111 'to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law.'" *In re E.H.P.*, 372 N.C. 388, 392, 831 S.E.2d 49, 52 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984)). A trial court may terminate a parent's parental rights in his or her children based upon a determination that "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion . . . ." N.C.G.S. § 7B-1111(a)(7).[6] In order to find that a parent's parental rights are subject to termination based upon willful abandonment, the trial court must make findings of fact that show that the parent had a "purposeful, deliberative and manifest willful determination to forego all parental duties and relinquish all

---

[5] The mother did not file a brief in defense of the trial court's orders with this Court.

[6] As a result of the fact that the termination petitions were filed on 26 June 2018, the relevant six-month period for purposes of this case runs from 26 December 2017 until 26 June 2018.

parental claims to [the child]," *In re N.D.A.*, 373 N.C. 71, 79, 833 S.E.2d 768, 774 (2019) (quoting *In re D.M.O.*, 250 N.C. App. 570, 573, 794 S.E.2d 858, 861–62 (2016)), with a parent having abandoned his or her child for purposes of N.C.G.S. § 7B-1111(a)(7) in the event that he "withholds his presence, his love, his care, the opportunity to display filial affection, and willfully neglects to lend support and maintenance . . . ." *Pratt v. Bishop*, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962).

We further note that "[o]ur precedents are quite clear—and remain in full force—that '[i]ncarceration, standing alone, is neither a sword nor a shield in a termination of parental rights decision.' " *In re M.A.W.,* 370 N.C. 149, 153, 804 S.E.2d 513, 517 (2017) (second alteration in original) (quoting *In re P.L.P.,* 173 N.C. App. 1, 10, 618 S.E.2d 241, 247 (2005), *aff'd per curiam*, 360 N.C. 360, 625 S.E.2d 779 (2006)). Although "a parent's options for showing affection while incarcerated are greatly limited, a parent *will not be excused from showing interest in [the] child's welfare by whatever means available.*" *In re C.B.C.*, 373 N.C. 16, 19–20, 832 S.E.2d 692, 695 (2019) (quoting *In re D.E.M.,* 257 N.C. App. 618, 621, 810 S.E.2d 375, 378 (2018)). As a result, our decisions concerning the termination of the parental rights of incarcerated persons require that courts recognize the limitations for showing love, affection, and parental concern under which such individuals labor while simultaneously requiring them to do what they can to exhibit the required level of concern for their children. *In re K.N.,* 373 N.C. 274, 283, 837 S.E.2d 861, 867–68 (2020) (stating that "the extent to which a parent's incarceration or violation of the

terms and conditions of probation support a finding of neglect depends upon an analysis of the relevant facts and circumstances, including the length of the parent's incarceration").

In the course of determining that respondent-father's parental rights in the children were subject to termination on the grounds of willful abandonment, the trial court found as a fact that:

> 5.  [Respondent-father] was not present, but represented by Adam E. Anderson, Esq. [Respondent-father's] Attorney informed the Court that he met with [respondent-father], but was unable to ascertain his wishes as to whether he wished to contest this action or not. [Respondent-father] also indicated he did not want to be present due to wanting to focus his efforts on "trial preparation" for his upcoming criminal matters. [Respondent-father's] Attorney also reached out to [respondent-father's] Federal Attorney, Anthony Martinez, who spoke with [respondent-father] and indicated that he was also unable to ascertain whether [respondent-father] wished to contest this matter. [Respondent-father's] Attorney made a motion to continue this matter, which was denied. This matter was filed on June 26, 2018 and was noticed on well in advance of the trial date.
>
> . . . .
>
> 10. Respondent[-father] has not participated in the care of the [children] in the last six (6) months and has not had any meaningful interaction with the [children] since March 8, 2013.
>
> . . . .
>
> 12. Respondent[-father] has pending criminal charges for child related sex offenses which have prevented and

prevent him from being a meaningful part of the [children's] live[s].

13. [Amy] was four (4) years old when she disclosed that she was the victim of a sexual assault by her father. Upon disclosure, [the mother] made [respondent-father] leave the home and reported these allegations to the Ashe County Sheriff's Department, who started an investigation. [Respondent-father] was charged with fourteen (14) counts of sexual assault in state court and eight (8) charges in Federal Court. [The mother] did not know the exact names of the charges but did testify that they related to these allegations and other sexual acts including child pornography.

14. The Federal investigation also led to [respondent-father] being charged along with others for sexual acts including child pornography. . . .

15. During the time these acts were committed, [Amy] was two to four (2–4) years old. Her brother, [Andy], was a newborn and nonverbal at the time.

. . . .

18. [Respondent-father] has not seen or spoken to the children since March 8, 2013. About eighteen (18) months after this date, he contacted the [mother] requesting to see the children, but this is the only attempt he has made to contact the children.

. . . .

22. . . . . [The children] have no bond with [respondent-father. Amy] refers to [respondent-father] as "Aaron", not "dad".

. . . .

24. The [mother] was granted sole legal and physical custody of the children in 2014. [Respondent-father]

was not allowed further visitation "absent further orders of the Court." [Respondent-father] has taken no action to file anything with the Court seeking visitation with the children.

25. [Respondent-father] has not made any attempt to contact or see the [children] for the six (6) months next preceding the filing of this action and has not had any meaningful interaction with the [children] since March of 2013.

26. [Respondent-father] has willfully abandoned the juvenile[s] for at least six (6) months immediately preceding the filing of this action. The actions of [respondent-father] manifest a willful determination to forego all parental duties and relinquish all parental claims regarding the minor children. This was done with purpose and deliberation.

27. [Respondent-father's] attorney argued that the actions of [respondent-father] were not willful due to his incarceration. The Court's findings of willfulness are not based on incarceration alone. Despite his incarceration, [respondent-father] is not excused from showing an interest in his children's welfare. The Court has considered other actions that could have been taken by the [respondent-father]. He could have filed a motion for contact or visitation with the Court in the custody action.

28. [Respondent-father] has at all times been able to ascertain the whereabouts of the [children.] [The mother] testified that [respondent-father's] Federal Attorney came to her home a few months ago to ask questions regarding [respondent-father's] criminal case.

Although these findings of fact are, admittedly, rather sparse, we believe that they do suffice to support the trial court's conclusion that respondent-father's parental

rights in the children were subject to termination for abandonment pursuant to N.C.G.S. § 7B-1111(a)(7).

In its termination orders, the trial court found[7] as a fact that respondent-father's trial counsel "met with [respondent-father]" and "was unable to ascertain his wishes as to whether he wished to contest this action or not." In addition, the trial court found that respondent-father's trial counsel had "reached out" to the attorney responsible for representing respondent-father in connection with his pending federal criminal cases, who "was also unable to ascertain whether [respondent-father] wished to contest this matter." The trial court further found that Amy "was four (4) years old when she disclosed that she was the victim of a sexual assault by" respondent-father,[8] who "was charged with fourteen (14) counts of sexual assault in state court and eight (8) charges in [f]ederal court." The trial court found that the mother "was granted sole legal and physical custody of the" children by means of an order entered in the District Court, Ashe County, with respondent-father not being "allowed further visitation 'absent further orders of the Court'" The trial court also found that respondent-father "has not participated in the care of the [children] in the past six (6) months," "has not had any meaningful interaction with the [children] since March 8,

---

[7] Respondent-father has not challenged any of the trial court's findings of fact as lacking in sufficient evidentiary support, rendering the trial court's findings binding upon us for purposes of appellate review.

[8] The mother testified at the termination hearing that respondent-father had admitted the truth of Amy's accusation.

2013," "has taken no action to file anything with the Court seeking visitation with the children," and "has not made any attempt to contact or see the [children] for the six (6) months next preceding the filing of this action and has not had any meaningful interaction with the [children] since March of 2013." The trial court found that, approximately eighteen months after March 8, 2013, respondent-father had "contacted [petitioner-mother] requesting to see the children," with this having been "the only attempt he has made to" do so. In response to respondent-father's contention that "the actions of [respondent-father] were not willful due to his incarceration," the trial court found that, "[d]espite his incarceration, [respondent-father] is not excused from showing an interest in his children's welfare," that "[t]he Court ha[d] considered other actions that could have been taken by" respondent-father, and that respondent-father "could have filed a motion for contact or visitation with the Court in the custody action." Finally, the trial court found that respondent-father "ha[d] at all times been able to ascertain the whereabouts of the [children]" and that the attorney that represented respondent-father in his federal criminal cases "came to [petitioner-mother's] home a few months ago to ask questions regarding [respondent-father's] criminal case." Based upon these findings of fact, the trial court concluded that respondent-father's actions and inactions "manifest a willful determination to forego all parental duties and relinquish all parental claims regarding the" children and that "[t]his was done with purpose and deliberation."

A careful review of the termination orders reveals that the trial court did not conclude that respondent-father's parental rights in the children were subject to termination on the grounds of abandonment solely because he had failed to make direct contact with them in violation of the custody and visitation order. On the contrary, the trial court specifically noted that respondent-father was "not excused from showing an interest in his children's welfare" because of his incarceration and found as a fact that, among other things, the only attempt that respondent-father had made to contact the children had occurred when he communicated with petitioner-mother about eighteen months after his last "meaningful" contact with them. In other words, the trial court found that respondent-father had, with one exception, done nothing to maintain contact with the mother, with whom the children lived and who would know how they were doing,[9] making this case similar to *In re C.B.C.,* 373 N.C. at 23, 832 S.E.2d at 697 (noting, in describing the reasons that the trial court had not erred by finding that a parent's parental rights in a child were subject to termination for abandonment, that the trial court had found that the parent "did not contact [the child's custodians] to inquire into [the child's] well-being"), and *In re B.S.O.,* 234 N.C. App. 706, 711, 760 S.E.2d 59, 64 (2014) (upholding the trial court's

---

[9] Admittedly, petitioner-mother testified that, at the time that respondent-father contacted her, she "hung up" on him and that, subsequently, "the state put a ban and didn't let him call me." As a result, once again, respondent-father was the author of his own misfortune given that he "demanded" to be allowed to see the children. Moreover, nothing in the mother's testimony suggests that respondent-father was in any way prohibited from communicating with the mother by mail or through intermediaries.

determination that a parent had abandoned his children on the grounds that the trial court's findings showed that, "during the relevant six-month period, respondent-father 'made no effort' to remain in contact with his children or their caretakers and neither provided nor offered anything toward their support"), and distinguishable from *In re D.E.M.*, 257 N.C. App. at 621, 810 S.E.2d at 379 (holding that the trial court had erred by finding that an incarcerated parent's parental rights in his child were subject to termination for abandonment based, in part, on the fact that "the trial court's findings . . . do not address, in light of his incarceration, what other efforts [the parent] could have been expected to make to contact [the other parent] and the juvenile").

Although the custody and visitation order that was entered at petitioner-mother's request did preclude respondent-father from having direct contact with the children, it did not place any other limitation upon his ability to interact with or show love, affection, and parental concern for the children.[10] The trial court's findings of

---

[10] In spite of the fact that respondent-father has contended in his brief before this Court that he would have been unable to make a showing of "changed circumstances" sufficient to support a request for modification of the existing custody and visitation order, respondent-father points to nothing in the relevant order that prohibited him from attempting to obtain permission from the mother to have contact with the children or from requesting the mother or others to relay his best wishes to them. Aside from the fact that this argument seems inconsistent with our recent decision in *In re E.H.P.*, 372 N.C. at 394, 831 S.E.2d at 53, in which we declined to accept a parent's contention that he had failed to seek modification of a temporary custody order because "he 'wasn't in a place in [his] life to—to really be a father or parent,'" respondent-father's exclusive focus upon an attempt to handicap his own likelihood of successfully obtaining a change in the existing custody and visitation order is inconsistent with our insistence that incarcerated parents do what they

fact reflect that respondent-father had the legal right and practical ability to contact the mother directly or through intermediaries for the purpose of inquiring about the children's welfare and asking that she convey his best wishes to them, with nothing in the custody and visitation order serving to prohibit him from doing so. Similarly, nothing in the custody and visitation order prohibited respondent-father from using other persons as a vehicle for the indirect communication of his love, affection, and parental concern for the children. In spite of the fact that respondent-father had the ability to make such inquiries or to request others to do so, the trial court's findings of fact reflect that respondent-father did not ever make contact with petitioner-mother to ask permission to have contact with the children or to otherwise express any love, affection, or parental concern for them during the six-month period prescribed in N.C.G.S. § 7B-1111(a)(7) and that respondent-father would not even clearly tell his trial counsel whether he opposed the allowance of the termination petitions. As a result, we have no difficulty in determining that the trial court's findings do, wholly aside from their references to respondent-father's failure to seek a modification of the custody and visitation order, support a conclusion that respondent-father completely withheld his love, affection, and parental concern for the children, rendering his parental rights in them subject to termination for abandonment pursuant to N.C.G.S. § 7B-1111(a)(7) and rendering this case easily

---

can in order to show love and affection for their children and the trial court's depiction of defendant's failure to do anything to this effect at all.

distinguishable from decisions such as *In re K.C.*, 247 N.C. App. 84, 87–88, 805 S.E.2d 299, 301–02 (2016) (holding that the trial court's findings of fact failed to support the termination of the mother's parental rights on the grounds of neglect by abandonment despite her failure to visit with the child for the last year prior to the termination hearing given that the father, based upon the advice of a therapist, refused to grant the mother's request for a visit, the fact that the mother had had sporadic visits with the child prior to being denied access to the child, and the fact that the mother had paid court-ordered child support), and *In re T.C.B.*, 166 N.C. App. 482, 485–87, 602 S.E.2d 17, 19–20 (2004) (holding that the trial court's findings of fact failed to support the termination of the father's parental rights in his child on the grounds of abandonment despite the fact that he had not visited with the child for four years prior to the termination hearing and had not sent the child any letters, cards, or gifts during that period given the fact that the mother had denied his request to visit the child during that period, the fact that he had visited with the child on an earlier date, the fact that the attorney representing the father in connection with charges that he had sexually abused his child (that were later dismissed) advised him to refrain from attempting to visit the child during the pendency of the criminal charges, the fact that the father refused to accept an agreement pursuant to which the pending charges

would be dismissed in return for his relinquishment of his parental rights, and the fact that the father regularly paid child support).[11]

In seeking to persuade us to reach a different result, respondent-father argues, in essence, that the order prohibiting him from having contact with the children stood as an absolute barrier to his ability to show love, affection, and parental concern for them and that this fact should preclude a finding of abandonment for purposes of N.C.G.S. § 7B-1111(a)(7). Respondent-father appears to take the position that, in the absence of a reasonable belief that he had a chance of prevailing in an action seeking to have the existing custody or visitation arrangements modified, he could not be found to have willfully abandoned the children despite having done absolutely nothing to express any interest in their welfare. However, as we have already demonstrated, the trial court did not find that respondent-father's parental rights in the children were subject to termination for abandonment solely because he failed to make direct contact with the children at a time when he was incarcerated and prohibited from doing so by the custody and visitation order. Instead, the trial court's findings of fact reflect that respondent-father failed to do anything whatsoever to express love, affection, and parental concern for the children during the relevant six-month period, making this case completely different from *In re K.N.*, 373 N.C. at 284,

---

[11] The conduct of the father in *T.C.B.* stands in stark contrast to that of respondent-father, who, as described in the trial court's findings, would not even take a position concerning whether he did or did not oppose the termination of his parental rights in the children.

837 S.E.2d at 868, in which we held that the trial court's findings were "insufficient to support [its] ultimate determination that respondent's parental rights were subject to termination on the basis of neglect." Thus, respondent-father's argument fails to take the entirety of the trial court's findings of fact into consideration or to come to grips with the ultimate problem created by the fact that the trial court's findings reflect a total failure on his part to take any action whatsoever to indicate that he had any interest in preserving his parental connection with the children.

A decision to overturn the trial court's termination orders in this case would also run afoul of our decisions concerning the manner in which termination of parental rights cases involving incarcerated individuals should be decided. As we have already noted, the fact of incarceration is neither a sword nor a shield for purposes of a termination of parental rights proceeding. Although the fact that he was incarcerated and subject to an order prohibiting him from directly contacting the children created obvious obstacles to respondent-father's ability to show love, affection, and parental concern for the children, it did not render such a showing completely impossible. In spite of the fact that other options for showing love, affection, and parental concern for the children remained open to him, the trial court's findings show that respondent-father remained inactive. For that reason, the effect of a decision to overturn the trial court's termination orders would be to allow respondent-father to use his incarceration and the provisions of the custody and

visitation order as a shield against a finding of abandonment contrary to the consistent decisions of this Court and the Court of Appeals.

A decision to overturn the trial court's termination orders would also preclude a trial court from determining that a parent who has been accused of sexually abusing one of his children and incarcerated for a lengthy period of time prior to trial had abandoned his children solely because the parent's spouse and representatives of the State took action to protect the family from any risk that the incarcerated parent would inflict further harm upon the members of the family. A decision to reach the result that respondent-father contends to be appropriate in this case would raise serious questions about the extent, if any, to which an incarcerated individual subject to limitations upon his ability to contact a child that he had allegedly abused could ever be found to have abandoned his or her children for purposes of N.C.G.S. § 7B-1111(a)(7) regardless of that parent's failure to do what he or she could have done to show love, affection, and parental concern for his or her children. Such a result seems inconsistent with the intent of the General Assembly and the precedents of this Court or the Court of Appeals. As a result, for all of these reasons, we conclude that the trial court's termination orders should be affirmed.

AFFIRMED.

Justice EARLS dissenting.

This case is yet another example of bad facts making bad law. The majority's decision undermines parental rights and expands the definition of abandonment because to do otherwise, in the majority's view, would "raise serious questions about the extent, if any, to which an incarcerated individual subject to limitations upon his ability to contact a child that he had allegedly abused could ever be found to have abandoned his or her children for purposes of N.C.G.S. § 7B-1111(a)(7) regardless of that parent's failure to do what he or she could have done to show love, affection, and parental concern for his or her children." Stated more simply, the majority would like to make sure that a parent's rights to a child can be terminated if the parent abuses the child, even if the parent is incarcerated. While I certainly agree with that objective, the General Assembly has already addressed it. *See* N.C.G.S. § 7B-1111(a)(1) (2019) (allowing for the termination of parental rights if a parent has abused the child). It is therefore unnecessary, as the majority does today, to expand the definition of willful abandonment to include a factual situation as limited as the one before us in this case. I would remand this case to the trial court for additional findings.

As the majority acknowledges, the trial court's order shows that the judgment terminating respondent's parental rights was based on findings that respondent did not have any contact with the children since 2013, that he did not attempt to contact or see them in the six months preceding the termination petition, and that he did not

file a motion in the civil custody case to modify the no-contact provisions of the 2014 custody order.[1] None of these findings support the conclusion that respondent willfully abandoned his children.

First, respondent's mere lack of contact does not demonstrate that he had a purposeful, deliberative, and manifest willful determination to forego all parental duties and relinquish all parental claims to Amy and Andy, because he was prohibited by court order from contacting the children. *Cf. In re T.C.B.*, 166 N.C. App. 482, 486–87, 602 S.E.2d 17, 19–20 (2004) (holding that a trial court's conclusion of willful abandonment was not supported by its findings regarding lack of visits, because a protection plan between DSS and the mother prohibited visitation with the respondent-father, and because the respondent-father's attorney instructed him not to have any contact with the child); *In re K.C.*, 247 N.C. App. 84, 88, 805 S.E.2d 299, 301–02 (2016) (holding that a trial court's conclusion of neglect by abandonment was not supported by its findings regarding lack of visits, because the petitioner-father denied the respondent-mother's request for visitation "on the grounds that the child's therapist determined that visits should be suspended indefinitely"). Willful abandonment under N.C.G.S. § 7B-1111(a)(7) requires *willful* abdication of parental responsibility, which simply does not occur if a parent does not contact his children

---

[1] The majority separately claims that the trial court based its conclusions, in part, on respondent's failure to maintain contact with the children's mother. The trial court's order contains no statement to that effect.

in compliance with a court order. *Cf. Pratt v. Bishop*, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962) (defining abandonment "as wilful neglect and refusal to perform the natural and legal obligations of parental care and support"); *id.* at 502, 126 S.E.2d at 608 ("Abandonment requires a wilful intent to escape parental responsibility and conduct in effectuation of such intent."). Respondent's mere lack of contact thus does not support the trial court's conclusion on the ground of willful abandonment.

Second, the fact that respondent did not file a motion seeking to modify the no-contact provisions of the civil custody order similarly does not demonstrate that he willfully abandoned his children. Filing a motion to modify custody or visitation is evidence that a parent does not have a willful determination to forego all parental duties and relinquish all parental claims to a child. *See, e.g.*, *In re D.T.L.*, 219 N.C. App. 219, 222, 722 S.E.2d 516, 518 (2012) ("Having been prohibited by court order from contacting either petitioner or the juveniles, respondent's filing of a civil custody action clearly establishes that he desired to maintain custody of the juveniles and cannot support a conclusion that he had a willful determination to forego all parental duties and relinquish all parental claims to the juveniles."). However, the trial court's findings do not indicate that respondent could have successfully modified the civil custody order with such a motion. Actual modification of custody or visitation requires a parent to show a substantial change in circumstances affecting the welfare of the child. *Shipman v. Shipman*, 357 N.C. 471, 473, 586 S.E.2d 250, 253 (2003) ("It is well established in this jurisdiction that a trial court may order a modification of

an existing child custody order between two natural parents if the party moving for modification shows that a 'substantial change of circumstances affecting the welfare of the child' warrants a change in custody." (quoting *Pulliam v. Smith*, 348 N.C. 616, 619, 501 S.E.2d 898, 899 (1998))); *Charett v. Charett*, 42 N.C. App. 189, 193, 256 S.E.2d 238, 241 (1979) (applicable here because "[c]ustody and visitation are two facets of the same issue."). Given his continued incarceration on pending charges that included child pornography and sexual offenses against Amy, respondent could not show the required substantial change in circumstances necessary to modify the civil custody order. Respondent's failure to file a meritless motion in the civil custody case thus does not support the trial court's conclusion that he willfully abandoned his children.

To be sure, there may be other facts the petitioner could establish and the trial court could find that would support a conclusion that respondent willfully abandoned his children or that another ground for termination of his parental rights exists in this case. But our ruling today should be based solely on the facts that have been found by the trial court in its order terminating respondent's parental rights on the ground of willful abandonment. *See In re C.B.C.*, 373 N.C. 16, 19, 832 S.E.2d 692, 695 (2019) ("We review a trial court's adjudication under N.C.G.S. § 7B-1109 'to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law.'" (quoting *In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984))).

The majority makes two additional mistakes on its path to affirming the trial court. First, the trial court's findings concerning respondent's attorneys being "unable to ascertain" whether respondent wished to contest the termination somehow become support for the conclusion that respondent manifested a willful determination to forgo all parental duties and relinquish all parental claims to his children. However accurate the attorneys' statements may have been, those statements are not competent evidence of abandonment. Second, the majority essentially flips the burden of proof by reasoning that a lack of evidence in the record justifies a finding of abandonment because the father was "not excused from showing an interest in his children's welfare." This second point must be addressed in detail.

It remains true that the fact of a parent's incarceration neither requires a court to terminate the incarcerated parent's rights nor prevents a court from doing so. *See In re M.A.W.*, 370 N.C. 149, 153, 804 S.E.2d 513, 517 (2017) ("Our precedents are quite clear—and remain in full force—that '[i]ncarceration, standing alone, is neither a sword nor a shield in a termination of parental rights decision.'" (alteration in original) (quoting *In re P.L.P.,* 173 N.C. App. 1, 10, 618 S.E.2d 241, 247 (2005))). Indeed, this Court recently held that there were sufficient facts to support a finding of abandonment where the order barring the incarcerated father from having any contact with the minor child was merely a temporary custody order, and where there was evidence in the record that the father had the capacity to seek modification of the custody order and failed to do so because he felt he was not able to be a father to

his child. *See In re E.H.P.*, 372 N.C. 388, 394, 831 S.E.2d 49, 53 (2019) ("A temporary custody order is by definition provisional, and the order at issue here expressly contemplated the possibility that the no-contact provision would be modified in a future order."); *see also In re C.B.C.,* 373 N.C. at 19–23, 832 S.E.2d at 695–97 (holding that abandonment was established despite the fact that respondent had been incarcerated for approximately three of the relevant six months before the filing of the petition because respondent made no attempt to contact the child while not incarcerated and there was no court order barring him from doing so).

In this case, however, the record is silent as to whether the respondent could successfully modify the court orders that prevented him from having any contact whatsoever with his children. Thus, we are confronted with a situation similar to the situation in *In re K.N.*, 373 N.C. 274, 837 S.E.2d 861 (2020). In that case, we held that

> respondent's incarceration, by itself, cannot serve as clear, cogent, and convincing evidence of neglect. Instead, the extent to which a parent's incarceration or violation of the terms and conditions of probation support a finding of neglect depends upon an analysis of the relevant facts and circumstances, including the length of the parent's incarceration. The trial court's findings do not contain any such analysis.

*Id.* at 283, 837 S.E.2d at 867–68. Likewise, the bare bones order in this case does not provide sufficient facts to support the conclusion that respondent willfully abandoned his children. The trial court's findings do little more than establish that at the time of the hearing respondent was in jail awaiting trial, under a court order not to contact

his children. There are therefore few facts upon which to distinguish this case from *In re K.N.*

Accordingly, the trial court's findings do not support its conclusion that the ground of willful abandonment exists to terminate respondent's parental rights. Willful abandonment was the only basis upon which the trial court terminated respondent's parental rights to the minor children, and I would therefore vacate the trial court's order and remand for further proceedings.