IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-534

Filed 4 March 2026

Gaston County, No. 19JT000139-350

IN THE MATTER OF: T.M.

Appeal by Respondent-Mother from order entered 7 March 2025 by Judge Angela G. Hoyle in Gaston County District Court. Heard in the Court of Appeals 11 February 2026.

*J. Thomas Diepenbrock for Respondent-Appellant Mother.*

*J. Edward Yeager, Jr., for Petitioner-Appellee Gaston County Department of Health and Human Services.*

*Shannon Phillips for Guardian ad Litem.*

COLLINS, Judge.

Respondent-Mother appeals from the trial court's order terminating her parental rights to her child. Mother argues that the court's findings of fact and best interest determination are based upon a misapprehension of law. We affirm.

## I.   Background

Mother and Father are the biological parents of Tisha.[1] The Gaston County Department of Health and Human Services ("DHHS") filed a petition on 20

---

[1] We use a pseudonym to protect the identity of the minor child.

September 2019, alleging that Tisha was neglected and dependent due to a history of domestic violence between Mother and Father.  The petition alleged, in relevant part:

> On or about 9/30/18, an altercation took place between Respondent/mother and Respondent/father [] while the juveniles were present within Respondent/mother's home. Respondent/mother was seen bleeding from her face and told [her son[2]] to take care of his sister if something happens to Respondent/mother and that she loved them.  It was then reported that Respondent/father [] kidnapped Respondent/mother for approximately two hours and law enforcement was contacted by [Mother's son].  After this incident took place, and for a short period of time, Respondent/father [] did not live in the home.  However, eventually he did return to the home to reside with Respondent/mother and the juveniles.
>
> . . . .
>
> On or about 4/3/2019, the Department received a report that Respondent/father [] had shot Respondent/mother in the foot with a Smith & Wesson MMP AR-15 Rifle. Respondent/father [] stated it was an accidental shooting, though after Respondent/father shot Respondent/mother, he went outside and shot twice into the air.  [Tisha] was present during this incident. . . .
>
> . . . .
>
> On 9/2/19 at 7:48 AM, [Mother's son] contacted 911 and reported that Respondent/mother and Respondent/father [] were "fighting" and it was undetermined if there were weapons at the home.  [Mother's son] further reported that "his mother was causing problems." . . . .

DHHS obtained non-secure custody of Tisha that same day.

---

[2] Mother's son has a different biological father than Tisha.  Although he was a juvenile at the time of these incidents, he has since aged out of foster care.

Following a hearing, the court entered an order on 18 February 2020 adjudicating Tisha neglected. The court ordered Mother to follow DHHS's recommended case plan, which required her to: obtain safe, stable housing and employment; contribute financially to support Tisha; complete parenting classes; not violate any federal, state, or local laws; maintain weekly contact with DHHS; complete a mental health assessment and any recommended treatment; and complete domestic violence classes and any recommended treatment. The court initially adopted a primary permanent plan of reunification and a secondary permanent plan of adoption.

On 13 September 2020, Mother was charged with the First-Degree Murder of Father. The court entered an order on 17 March 2021 adopting a primary plan of adoption and a secondary plan of guardianship. Mother identified Tisha's maternal grandmother in Massachusetts as a potential guardian. Mother was convicted of Second-Degree Murder on 28 November 2023 and sentenced to 240 to 300 months' imprisonment.

DHHS filed a Petition for Termination of Parental Rights on 9 January 2025. Following a hearing, the court entered an order on 7 March 2025 terminating Mother's parental rights based upon (1) neglect, (2) willfully leaving the juvenile in foster care for more than twelve months without showing reasonable progress in correcting the conditions which led to the removal, and (3) dependency. Mother appealed.

## II. Discussion

Mother argues that the trial court misapprehended the law in making its findings of fact and best interest determination. Mother specifically argues that the court erroneously found that permanence may be achieved for Tisha only through adoption.

"Termination of parental rights involves a two-stage process." *In re A.W.*, 288 N.C. App. 123, 125 (2023) (quotation marks and citation omitted). "At the adjudication stage, the petitioner has the burden of proving by clear, cogent and convincing evidence that at least one statutory ground for termination exists." *In re T.C.B.*, 166 N.C. App. 482, 484 (2004) (citations omitted). If one or more grounds exist, the court then proceeds to the disposition stage where it determines whether termination of parental rights is in the best interest of the child. N.C. Gen. Stat. § 7B-1110(a) (2025). The court must consider the following factors and make written findings regarding those that are relevant:

> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6) Any relevant consideration.

*Id.* However, the court is not required to make written findings regarding any

dispositional alternatives it considered. *In re M.S.E.,* 378 N.C. 40, 63 (2021). Our

Supreme Court

> has rejected arguments that the trial court commits error at the dispositional stage of a termination of parental rights proceeding by failing to explicitly consider non-termination-related dispositional alternatives, such as awarding custody of or guardianship over the child to the foster family, by reiterating that the paramount consideration must always be the best interests of the child.

*In re N.K.*, 375 N.C. 805, 820 (2020) (quotation marks and citations omitted).

We review the trial court's findings of fact at the disposition stage to determine

whether they are supported by sufficient evidence. *In re J.C.J.*, 381 N.C. 783, 788

(2022). We review a trial court's determination that termination of parental rights is

in the best interest of the child for an abuse of discretion. *In re K.H.*, 281 N.C. App.

259, 270 (2022) (citation omitted). "An abuse of discretion occurs when the trial

court's ruling is so arbitrary that it could not have been the result of a reasoned

decision." *Id.* (quotation marks and citation omitted).

Here, Mother challenges the following findings of fact:

> 8. A permanent plan of care can only be accomplished by the severing of the relationship between the juvenile and the Respondent/mother by termination of parental rights of the Respondent/mother.
>
> . . . .
>
> 17. The Court finds that although guardianship is the secondary permanent plan for the juvenile, guardianship is not in the best interest of the juvenile in that guardianship would still be placing the juvenile in a holding pattern.

Guardianship would not provide the juvenile with a permanent home in a reasonable amount of time.

18.  The juvenile's best interests are more paramount than maintaining the biological family's integrity.  The goal of achieving permanence for the juvenile outweighs the goal of maintaining the biological family connection.

. . . .

21.  The juvenile deserves safety, security, emotional support and a permanent home.

Mother's argument that the court misapprehended the law is without merit. The challenged findings reflect the court's weighing of the statutory factors and evidence presented, not a misunderstanding of the law regarding permanent plans.

Finding of Fact 8 reflects the court's determination that the primary permanent plan for Tisha could be accomplished only through termination of Mother's parental rights, not that adoption is the only permanent plan as a matter of law.  The court expressly acknowledged that guardianship was the secondary permanent plan but found that guardianship was not in Tisha's best interest because it would place her in a holding pattern, as the terms of guardianship may be modified pursuant to N.C. Gen. Stat. § 7B-1000.  This finding reflects that the court evaluated guardianship as a potential permanent plan and determined that it was not in Tisha's best interest.

The court recognized in Finding of Fact 18 that Tisha's need for permanence outweighed the goal of maintaining the biological family connection, consistent with the well-established principle that the paramount consideration must always be the

best interest of the child. *In re N.K.*, 375 N.C. at 820.

Finding of Fact 21 likewise demonstrates that the court considered Tisha's need for safety, security, emotional support, and a permanent home. By referring to a permanent home, the court recognized that guardianship lacks the same degree of permanence as adoption because guardianship remains subject to modification under N.C. Gen. Stat. § 7B-1000.

Because the court applied the correct legal framework and was not required to make written findings regarding dispositional alternatives, it did not misapprehend the law in making its findings of fact or best interest determination. Accordingly, the court did not abuse its discretion by determining that terminating Mother's parental rights was in Tisha's best interest.

## III. Conclusion

For the foregoing reasons, we affirm the trial court's order terminating Mother's parental rights to Tisha.

AFFIRMED.

Judges WOOD and STADING concur.